**IN THE SUPERIOR COURT OF GUAM**

| ROSEANA E.D. PALMER,<br><br>Plaintiff,<br><br>v.<br><br>MARIANA STONES CORPORATION, and DOES 1 through 10,<br><br>Defendant. | CIVIL CASE NO. CV0709-13<br><br>**DECISION AND ORDER** |

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on March 14, 2014, on Plaintiff Mariana E.D. Palmer's ("Plaintiff") Motion for Summary Judgment. Attorney Genevieve P. Rapadas was present on behalf of Plaintiff. Attorney Georgette Bello Concepcion was present on behalf of Defendant Mariana Stones Corp. ("Defendant"). Having reviewed the pleadings and the arguments presented, the Court now issues its Decision and Order.

## BACKGROUND

This case fundamentally involves a lease agreement between Plaintiff and Defendant. Plaintiff owns a parcel of land designated as Lot 3-2, Tract 34000, Dededo, Guam ("Property"). Defendant, by all indications, is a building contractor engaged in construction related activities. On September 3, 2011, Plaintiff and Defendant entered into an Extraction Lease and Construction Agreement ("Agreement") wherein Plaintiff provided a lease of the property to Defendant. (Decl. of Genevieve P. Rapadas Supp. Mem. P. & Auth. Summ. J. ("Rapadas Decl."), Ex. 2, Jan. 17, 2014). The agreement allowed for the extraction and removal of

mineral materials and for other uses and activities determined by Defendant to be necessary or desirable in connection therewith. *Id.* at 2 ¶ 4. In consideration for the lease of property, Defendant was to, inter alia, pay Plaintiff, $50,000.00 on March 1, 2012. *Id.* at Addendum A. Thereafter, beginning on June 1, 2012, Defendant was to pay Plaintiff $8,000.00 per month for the remaining term of the lease. *Id.* The agreement goes on to provide that in any given month, if the actual aggregate removed, at the two dollar ($2.00) per cubic rate, results in an amount in excess of the minimum lease rent for that month, beginning with the June 1, 2012 payment, then the higher amount will be paid for that month. *Id.* Defendant made payments of $10,000.00 on April 2, 2012, and $40,000.00 on August 27, 2012, which constituted the $50,000.00 total due by March 12, 2012, as provided for in the agreement. (Def.'s Answer at 2 ¶¶ 8-9; Rapadas Decl. Ex. 8 at 2, Resp. No. 4).

On June 4, 2013, Plaintiff filed a Breach of Contract action against Defendant, alleging that from June 1, 2012 to present, Defendant has failed to remit a monthly payment of either the higher of $8,000.00 or the actual aggregate removed at the rate of $2.00 per cubic yard. (Compl. ¶ 15.) Defendant has sought to excuse its failure to pay Plaintiff the minimum monthly rent on the basis of its inability to transport aggregate from the property to its processing plant to sell the processed aggregate. (Rapadas Decl. Ex. 8, at Resp. No. 3). Defendant attributes its inability to transport the aggregate to actions taken by the Fish and Wildlife Service ("FWS").

Plaintiff's property is located approximately three-quarters of a kilometer south of Lot 10081-2, Dededo, Guam ("FWS' Lot"). (Rapadas Decl. ¶ 6 & Exs. 3 & 4; Decl. of Dennis S. Balagtas, ¶ 3 & Ex. A). The FWS lot is owned by the Fish and Wildlife Service. The road ("Chalan Urunao"), which provides the only means of automobile access to Plaintiff's property, passes over the FWS lot via an easement.

At some point in mid to late 2012, FWS informed Defendant that it needed to obtain a special use permit from the FWS in order for its trucks to traverse the easement while transporting the aggregate. (Rapadas Decl. Ex. 6 [122-131 at ¶¶ 6-9].) On December 12, 2012, Defendant applied for a special use permit from FWS. (Rapadas Decl. Ex. 6 [122-131 at ¶ 10; 132-135].) FWS denied Defendant's application on December 20, 2012. (Rapadas Decl. Ex. 6 [148]].) Despite the FWS' denial, Defendant began transporting aggregate over the easement. (Rapadas Decl. Ex. 6 [122-131, 148 at ¶¶ 20-24].) FWS issued numerous violation notices to Defendant for transporting aggregate over the easement without a special use permit. (Rapadas Decl. Ex. 7, at Resp. No. 4). According to Defendant, FWS has issued at least twenty violation notices and has, by and large, blocked Defendant's trucks from transporting aggregate over the easement. (Rapadas Decl. Ex. 7, at Resp. No. 4).

On January 17, 2014 Plaintiff filed the instant summary judgment motion. In light of Defendant's asserted defenses, Plaintiff argues that there is no legal or equitable excuse or justification for Defendant's failure to pay the amount past due under the agreement. (Mem. P. & Auth. Supp. Pl's. Mot. Summ. J ("Mot.") at 3).

## DISCUSSION

**Summary Judgment Standard**

Pursuant to Rule 56(c) of the Guam Rules of Civil Procedure ("GRCP"), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." GRCP 56(c). A genuine issue exists when "there is 'sufficient evidence' which establishes a factual dispute requiring resolution by a fact-finder." *Iizuka Corp. v. Kawasho Int'l (Guam) Inc.*, 1997 Guam 10 ¶ 7 (citing *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630

(9th Cir. 1987)). The factual dispute must concern a material fact. *Id.* "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit . . . [d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *Id.* "If the movant can demonstrate that there are no genuine issues of material fact, the non-movant cannot merely rely on allegations contained in the [pleadings], but must produce at least some significant probative evidence tending to support the [pleadings]." *Id.* at ¶ 8. (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, (1986)). "In addition, the Court must view the evidence and draw inferences in the light most favorable to the non-movant." *Edwards v. Pacific Financial Corp.*, 2007 Guam 27 ¶ 7. "The court's ultimate inquiry is to determine whether a 'specific fact' set forth by the nonmoving party, coupled with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *Iizuka*, 1997 Guam 10 ¶ 8 (quoting *T.W. Elec. Serv.*, 809 F.2d at 631). "Stated simply, there is a trial issue if there is sufficient evidence for a jury to return a verdict in the non-moving party's favor." *Kim v. Hong*, 1997 Guam 11 ¶ 8 (citing *Anderson*, 477 U.S. at 250).

**Breach of Contract**

To succeed on a cause of action for a breach of contract, Plaintiff is required to prove: (1) the existence of a contract; (2) Plaintiff's performance on the contract, or excuse for nonperformance; (3) Defendant's breach; and (4) the resulting damage. *First Commercial Mortgage Co. v. Reece*, 108 Cal.Rptr.2d 23, 33 (Cal. Ct. App. 2001). In this case, Plaintiff asserts that a valid contract exists between Plaintiff and Defendant under which Plaintiff performed; and Defendant's breach caused damage to Plaintiff in the amount of at least $144,000. (Mot. at 7).

///

First, Defendant's opposition does not dispute that the lease agreement is a valid contract. With respect to the second element, Plaintiff's performance on the contract, Defendant disputes Plaintiff's position that her "only obligation under the lease agreement is to deliver a leasehold estate to Defendant." (Opp'n at 2). However, Plaintiff correctly points out that Defendant has failed to provide the Court with evidence of any specific obligations, other than delivering possession of the property pursuant to the lease agreement, of which Plaintiff has failed to fulfill. (Pl.'s Reply at 2-3). Lastly, Defendant's opposition does not dispute the fourth element of resulting damages. Thus, Plaintiff has met her burden on summary judgment for the first, second, and fourth elements of her breach of contract claim.

With respect to the third element, Defendant's breach; Defendant opposes by focusing on the purpose of the lease agreement. By relying on the purpose of the agreement, Defendant seemingly argues that its obligation to pay rent was ultimately conditioned upon its selling of the aggregate that it removed. Defendant asserts:

> Reading the provisions of the agreement in conjunction with each other and as a whole, it is apparent that the purpose of the parties' Agreement is to extract aggregate from Plaintiff's property of which Defendant was to sell and then pay royalties to Plaintiff based on the amount of aggregate removed and sold.

(Opp'n at 1-2). Defendant specifically points to the "purpose" of lease as provided in the lease agreement, which reads: "[l]essee wishes to lease the Property so that it can extract aggregate thereon." (Rapadas Decl. Ex. 2). Defendant further relies on language of the agreement outlining the consideration that Defendant is to pay Plaintiff:

> Payment by Lessee to Lessor of the sum of TWO AND NO/100 DOLLARS ($2.00) per cubic yard of usable aggregate material removed from the within-described Property in accordance with the terms of the Aggregate Removal Plan and Schedule of Payment . . .

///

Palmer v. Mariana Stones Corp.
Case No. CV0709-13
Decision and Order

Page 5 of 14

*Id.* Next, Defendant points to the "Aggregate Removal Plan and Schedule of Payment" attached to the agreement as Addendum A. In its entirety, the Schedule of Payment under Addendum A provides:

> SCHEDULE OF PAYMENT: Lessee plans to remove aggregate from Lessor's Property, and from the three contiguous lots (3-1, 3-3, and 3-4) without regard to property boundaries between the four lots. Payments to the respective Lessors' will be at TWO AND NO/100 DOLLARS ($2.00) per cubic yard of usable aggregate, and distributed proportionally in accordance with the attached EXHIBIT "A (1) DEPOSIT CALCULATION TABLE".
>
> Lessor will be paid FIFTY THOUSAND AND NO/100 DOLLARS ($50,000) on March 1, 2012. Beginning June 1, 2012, Lessor will be paid a minimum of EIGHT THOUSAND NO/100 DOLLARS ($8,000) per month for the remaining term of this lease. In any given month, if the actual aggregate removed, at the Two Dollar ($2.00) per cubic yard rate, results in an amount in excess of the minimum lease rent for that month, beginning with the June 1, 2012 payment, then the higher amount will be paid for that month.
>
> It is the intention of the parties that the total amount of lease rent for the five (5) year period would be the higher of (1) EIGHT HUNDRED SIX THOUSAND TWO HUNDRED FOUR AND NO/100 DOLLARS ($806,204), (which equates to Four Hundred Three Thousand One Hundred Two (403,102) cubic yards of expected usable aggregate times Two Dollars per cubic yard); OR (2) the Actual Usable Aggregate removed at the $2.00 per cubic yard rate. This will require an adjustment of the final payment made on August 1, 2016.

*Id.* Finally, Defendant relies on the language of the agreement that provides:

> Grant of Lease. Lessor hereby leases the Property exclusively to Lessee for (a) exploring for, developing, extracting, processing, removing and selling, when and as determined by Lessee, mineral materials which may be used or useful as aggregate for construction, industrial, agricultural and other purposes...

*Id.* Defendant asserts that the ability to transport aggregate away from Plaintiff's property is a material fact as to Defendant's obligations and the purpose of the parties' agreement. (Opp'n at 4). Further, Defendant contends that without the ability to transport the aggregate, Defendant is not able to sale aggregate and pay Plaintiff royalties earned from the sale of the aggregate in furtherance of the purpose of the Agreement. *Id.*

Plaintiff argues that no single provision of the lease agreement, nor any combination of provisions contained in the lease agreement operate to impose a condition on Defendant's obligation to pay the minimum monthly rent. (Pl.'s Reply at 3). Plaintiff further argues that Defendant offers no explanation as to how the language under the Grant of Lease provision supports its assertion that *Defendant's obligation to pay minimum monthly rent was condition upon its ability to finance such payments from the sale of aggregate extracted from the property.* *Id.* at 4.

Finally, Plaintiff argues that while the Schedule of Payment may indicate Plaintiff's purpose in the entering the lease agreement, i.e., to be paid rent in a minimum amount of $8,000 per month, *it is unclear how this supports Defendant's position that its payment obligation was* conditioned upon Defendant's ability to finance its payment obligations by the sale of aggregate extracted from the property. *Id.* at 5. Plaintiff maintains that the Schedule of Payment indeed does the opposite in that it shows Plaintiff is entitled to a minimum payment of $8,000 per month.

The dispute in the instant matter concerns how the lease agreement is to be interpreted. As noted above, in dispute is the ultimate effect of the specific provisions designated as "Purpose," "Consideration," "Grant of Lease," and "Schedule of Payment," read together with the entire lease agreement.

Guam statutes provide guidance as to how contracts are to be interpreted. Specifically, 18 GCA § 87104 provides that: "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." 18 GCA § 87104. In addition, 18 GCA § 87105 directs that: "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however to the other provisions of this Chapter." 18 GCA § 87105.

*Palmer v. Mariana Stones Corp.*
Case No. CV0709-13
Decision and Order

Guam case law likewise sets forth that a court need not go beyond the four corners of the contract to enforce the terms as written. *See Wasson v. Berg,* 2007 Guam 16 ¶ 16 (citing *Guam United Warehouse Corp. v. DeWitt Transp. Servs.,* 2003 Guam 20 ¶ 24). Under both Guam statutes and case law, the Court is directed to begin with the language of the contract and, if the language is plain and clear, the Court will enforce the terms as written. The Court finds that the plain meaning of the disputed provisions, read as a whole with the entire lease agreement, does not condition Defendant's monthly payment obligation on Defendant's ability to transport and subsequently finance its payment obligations by the sale of aggregate extracted from the property. The plain language of the purpose provision merely provides that the Defendant wishes to lease the Property so that it can extract aggregate thereon. (Rapadas Decl. Ex. 2 at 1). Nowhere in this provision is there any indication that Defendant was to sell and then pay "royalties" to Plaintiff based on the amount of aggregate removed and sold. The Court finds that the language used in the Schedule of Payment section supports this determination. To begin with, the language: "[p]ayments to the respective Lessor's will be at TWO and NO/100 DOLLARS ($2.00) per cubic yard of usable aggregate . . ." merely provides a calculation of rent above what is set forth as the minimum monthly rent of $8,000 in the Schedule of Payment.

Next, the Schedule of Payment clearly provides that "Lessor will be paid FIFTY THOUSAND AND NO/100 DOLLARS ($50,000) ON MARCH 1, 2012." (Rapadas Decl. Ex. 2 at Addendum A). Nothing in the plain language of the agreement makes this obligation conditional. The Court finds the minimum monthly payment to be as absolute and unconditional as the obligation to pay $50,000 by March 1, 2012, which is contained in the line immediately preceding monthly payment requirement.

Furthermore, the final paragraph of the Schedule of Payment merely provides how rent would be calculated based on either the *expected usable aggregate* to be removed (403,102

cubic yards) or the *actual usable aggregate* removed, both at the $2.00 per cubic yard rate. Regardless of expected or actual usable aggregate removed, the Court still finds the minimum monthly obligation unconditional. Hypothetically, if all that was existed was "unusable" aggregate, then the provided calculations at the expected and actual rate would be irrelevant.

Finally, the Grant of Lease paragraph simply enumerates permitted uses of the property. As noted above, that provision reads: "Lessor hereby leases the Property exclusively to Lessee for (a) exploring for, developing, extracting, processing, removing and selling, when and as determined by Lessee . . . ." (Rapadas Decl. Ex. 2 at 2). Theoretically, if all Defendant were able to accomplish was exploration for aggregate, Defendant would still be liable for the minimum monthly rent, pursuant to the lease agreement.

For the above reasons, the Court cannot conclude that Defendant's monthly payment obligation was conditioned ultimately upon Defendant's ability to transport and sale the aggregate extracted from the property. On that basis, the Court concludes that Plaintiff has met its burden on summary judgment with regard to the essential elements of its breach of contract claim.

**Frustration of Purpose**

A defendant's performance on a contract may be excused if he is able to establish the defense of frustration of purpose, also known as commercial frustration. The Court notes that the doctrine of commercial frustration is limited in application so as to preserve the certainty of contracts. 30 Williston on Contracts *Frustration of Purpose*, § 77.95 (4th ed. 2014). The excuse of commercial frustration "is a conclusion of law drawn by the court from the facts of a given case." *Peoplesoft U.S.A., Inc. v. Softek, Inc.*, 227 F.Supp.2d 1116, 1119 (2002) (citing *Glens Falls Indem. Co. v. Persacallo*, 96 Cal.App.2d 799, 802 (1950)).

To establish the defense of commercial frustration:

1) the basic purpose of the contract, which has been destroyed by the supervening event must be recognized by both parties to the contract; 2) the event must be of a nature not reasonably to have been foreseen; and the frustration must be so severe that it is not fairly to be regarded as within the risks that were assumed under the contract; and 3) the value of counter performance to the promisor seeking to be performed must be substantially or totally destroyed.

*Peoplesoft U.S.A., Inc. v. Softeck*, Inc., 227 F.Supp.2d 1116. 1119-1120 (2002) (internal citations omitted).

Defendant argues that "[t]he U.S. government's refusal to allow Defendant to haul aggregate over the Easement has frustrated the purpose of the lease agreement." (Opp'n at 14). The FWS has issued Defendant more than twenty citations for the offense of "private operations." *Id.* at 4. Under 50 C.F.R. 97.97 "[s]oliciting business or conducting a commercial enterprise on any national wildlife refuge is prohibited except as may be authorized by special permit." 50 C.F.R § 27.97. Defendant argues that because it would not be "conducting a commercial enterprise" on the refuge, the FWS' enforcement of Fed Reg 27.97 was unforeseeable. (Opp'n at 5). Additionally, Defendant argues that the enforcement of Fed Reg 27.97 was not foreseeable based on the prior use of the easement by other land owners and lessees of other land owners. *Id.* For support, Defendant has submitted declarations to demonstrate how the FWS' actions were unforeseeable. Defendant has submitted the declaration of another land owner, namely Anthony M. Artero, to establish: 1) that representatives for the U.S. government have previously indicated that a bulldozer on a flatbed truck could utilize the access road; and 2) that other land owners in the vicinity have observed the easement being utilized by tour buses, equipment trucks, rubbish trucks, bulldozers, backhoes, excavators, and eighteen wheeler trucks. (Declaration of Anthony M. Artero Supp. Opp'n Mot. Summ. J. ("Artero Decl.") [2-4 ¶¶ 7-13].) The declaration also outlines how Artero attempted to have another company, Reliable Builders, remove a large pile of aggregate from

his property, but was informed by FWS that a Special Use Permit was required to use the access road. (Artero Decl. [4-5 ¶¶ 14-17].) Artero further stated that he was surprised to learn of this requirement considering that he knew large dump trucks and tour buses have been using the easement without said requirement and it was his understanding that the landowners in the area had the right to use the easement without restrictions. (Artero Decl. [5 ¶ 18].) Like Reliable Builders and Artero, Defendant was informed that it would be necessary for it to apply and obtain a special use permit. Similarly, Defendant asserts that it was surprised to learn of the requirement, considering that a commercial tourist company transports people in large buses over the easement. (Opp'n at 9). Defendant applied for special use permit, which the FWS denied. Defendant then appealed the denial, but to no avail. (Declaration of Georgette Bello Concepcion Supp. Opp'n Mot. Summ. J., ("Concepcion Decl.") Ex. C.) The U.S. Government ultimately concluded that the Easement was not suitable for hauling away aggregate. (Concepcion Decl., Ex. D) Consequently, FWS suggested pursuing an alternate route. (Concepcion Decl., Ex. F at 7 ¶29.) On those bases, Defendant argues that the actions of the FWS were unforeseeable and therefore, Defendant should be excused from its obligations under the lease agreement.

Plaintiff first argues that Fed Reg 27.97 predates the lease agreement by thirty-five years and was, therefore, a long established part of the legal landscape when Defendant entered into the Lease Agreement. (Pl.'s Reply at 8). Next, Plaintiff argues that Defendant is aware and on notice of a sign at the entrance of the wildlife refuge, which reads as follows: Entering Guam National Wildlife Refuge: Special Regulations Apply. *Id.* From this, Plaintiff contends that sufficient information was available to Defendant prior to execution of the lease agreement to enable Defendant to include language in the agreement which would have safeguarded against the alleged supervening event, i.e., the FWS' denial of Defendant's use of the easement. *Id.* at

9. Further, Plaintiff points out that lease agreement precludes a judicial interpretation that would imply any new condition, including any release of liability in cases of alleged commercial frustration. (Mot. at 14). The Lease Agreement provides: "No term, condition, representation, warranty or covenant not expressly set forth in this Lease has been made by or shall be binding upon either party. Neither party is bound by any implied covenant or owes any implied obligation to the other." (Rapadas Decl. Ex. 2 at 5). Given that language, Plaintiff argues that the Court is precluded from applying the doctrine of commercial frustration, as doing so would imply a condition into the lease agreement, which has already been contracted against. On those bases, Plaintiff maintains that the Court should reject Defendant's claim that its failure to pay minimum monthly rent is excused by the doctrine of commercial frustration. *Id.* at 10.

The purpose of the contract, as provided in the agreement, was for Defendant to lease the Property so that it could extract aggregate. (Rapadas Decl. Ex. 2 at 5). Plaintiff argues that its purpose in entering the contract was to be paid rent in a minimum amount of $8,000, as evidenced by the Schedule of Payment. (Pl.'s Reply at 5). Thus, with regard to the first element of establishing commercial frustration, the parties disagree as to the basic purpose of the contract, which has been destroyed by the supervening event, and therefore, the Court cannot say that the basic purpose of the contract is recognized by both parties.

The more apposite issue, however, is with respect to the second element, dealing with foreseeability. "Commercial frustration only applies where the parties could not have provided for the frustrating event through contractual safeguards." *Gander Mountain Co. v. Islip U-Slip LLC*, 923 F.Supp.2d 351, 361 (2013) (citing *Sage Realty Corp. v. Jugobanka, D.D.*, 1998 WL 702272, at *4, n.4 (S.D.N.Y Oct. 8, 1998)). "If a party could reasonably foresee an event that would destroy the purpose of the contract, and did not provide for the event's occurrence, then

that party will be deemed to have assumed the risk." *Id.* "Issues of foreseeability are often held for the trier of fact, precluding summary judgment." 30 Williston on Contracts, *Foreseeability* § 77:11 (4th ed.) In *119 Fifth Avenue, Inc., v. Taiyo Trading Co.*, the Supreme Court of New York County, denied motions for summary judgment, having been presented with an issue of fact relative to foreseeability. *119 Fifth Avenue, Inc., v. Taiyo Trading Co.*, 190 Misc. 123, 126, 73 N.Y.S.2d 774, 778 (1947). That case also involved a lease agreement. The lease provided that the defendant shall use and occupy the premises for the sale, assembly, storage and shipping of Japanese goods, Chinese goods, and Oriental goods, and for no other purpose. *Id.* at 124. However, following the World War Two attacks on Pearl Harbor, and tensions between the United States and Japan, the property custodian –acting under governmental authority– padlocked the leased premises and seized its contents. *Id.* A majority of the defendant's stock was owned by nationals of an enemy country. *Id.* The defendant ultimately vacated the premises and failed to pay the accrued rent. *Id.* The defendant raised the defense of frustration and argued that he was "prevented and prohibited from carrying on its business by reason of the action taken by the federal government, and that as a result the purpose of the lease was frustrated and performance rendered impossible." *Id.* The court held that an issue of fact was present "as to whether the supervening event or circumstance was within the contemplation of the parties at the time of the execution of the lease and might have been anticipated and guarded against." *Id.* The court determined that this issue was presented by the circumstance that, at the time the parties entered into the lease, the country was in a state of limited national emergency. *Id.*

Similarly, in this case, the Court is presented with an issue of fact as to whether the FWS' enforcement of Fed Reg 27.97 was foreseeable; in that it could have been guarded against at the time the agreement was executed. This issue of fact is raised by the circumstances

including: 1) representatives from the U.S. government previously indicating that a bulldozer on a flatbed truck could utilize the access road; and 2) other land owners in the vicinity having observed the easement being utilized by tour buses, equipment trucks, rubbish trucks, bulldozers, backhoes, excavators, and eighteen wheeler trucks. (Artero Decl. [2-4 at ¶¶ 7-13].) Although Defendant does not dispute being aware of the sign indicating that "Special Regulations Apply," other relevant circumstances existed at the time the lease was entered, which present genuine issues of material fact. On that basis, the Court is precluded from granting summary judgment at this time.[1]

///

///

///

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for summary judgment is DENIED. Schedule appearance is set for   JUN 2 7 2014  , 2014.@ 9:00 am

**IT IS SO ORDERED** this 10th day of June, 2014.

SERVICE VIA COURT BOX
I acknowledge that a copy of the Original hereto was placed in the court box of:
Calvo Fisher
Georgette Bello Conception
Date: 6.20.14   Time:
Deputy Clerk, Superior Court of Guam

HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

---

[1] Defendant also argues that the FWS' actions have made Defendant's ability to fulfill its obligations impossible. Opp'n at 15. Like Frustration of Purpose, the defense of Impossibility also requires a showing that the supervening condition was not foreseeable. Therefore, the Court's determination that the foreseeability element presents issues of fact also applies to Defendant's Impossibility defense.

*Palmer v. Mariana Stones Corp.*
Case No. CV0709-13
Decision and Order